**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jesse Morris, | No. CV-20-08259-PCT-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Jesse Morris's Applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") by the Social Security Administration ("SSA") under the Social Security Act ("the Act").[1] Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 15), Defendant Social Security Administration Commissioner's Response Brief (Doc. 16), and Plaintiff's Reply Brief (Doc. 17). The Court has reviewed the briefs, Administrative Record (Doc. 14, "R."), and the Administrative Law Judge's ("ALJ") decision (R. at 13-24) and affirms the ALJ's decision for the reasons addressed herein.

///

---

[1] The relevant DIB and SSI regulations in this case are virtually identical, and the Court cites only the DIB regulations in the Order. Parallel SSI regulations are found in 20 C.F.R. §§ 416.900-416.999 and correspond with the last two digits of the DIB citation (e.g., 20 C.F.R. § 404.1520 corresponds with 20 C.F.R. § 416.920).

## I. BACKGROUND

Plaintiff protectively filed an application for DIB on February 17, 2017, and an application for SSI on April 20, 2017, for a period of disability beginning on July 10, 2014. (R. at 13). Plaintiff's claims were denied initially on August 18, 2017, and upon reconsideration on February 6, 2018. (*Id.*) Plaintiff testified before an ALJ in a hearing regarding his claims on December 3, 2019. (*Id.*) The ALJ denied his claims on February 4, 2020. (R. at 13-24). On August 26, 2020, the Appeals Council denied his request for review of the ALJ's decision. (R. at 1-6). On September 30, 2020, Plaintiff filed this action seeking judicial review. (Doc. 1).

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. In short, upon consideration of the medical records and opinions, the ALJ evaluated Plaintiff's alleged disability based upon the severe impairments of type II diabetes, sleep apnea, bipolar disorder, depressive disorder, social anxiety disorder, status post traumatic brain injury secondary to a motor vehicle accident, cognitive and mood disorder, obesity, and insomnia. (R. at 15).

Ultimately, the ALJ assessed the medical evidence and opinions and concluded that Plaintiff was not disabled. (R. at 23-24). The ALJ found that Plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R Part 404, Subpart P, Appendix 1." (R. at 16). Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to "perform a wide range of medium work as defined in 20 C.F.R § 404.1567(b) and § 416.967(b)" with certain function limitations and concluded that "there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform." (R. at 17, 23).

## II. LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based

on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id*. To determine whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id*. As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five–step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id*. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id*. At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id*. If not, the ALJ proceeds to step four. *Id*. At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id*. If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id*. If not, the claimant is disabled. *Id*.

## III. ANALYSIS

Plaintiff raises two arguments for the Court's consideration: (1) the ALJ erred at step five of Plaintiff's RFC determination in evaluating his ability to perform other work; and (2) the ALJ improperly considered the assessment of the treating doctors' opinions. (Doc. 15 at 4). Plaintiff requests this Court remand this matter for an award of benefits. (*Id*. at 26-27).

### A. The ALJ properly analyzed Plaintiff's ability to perform other work at step five and substantial evidence supported the ALJ's decision.

Plaintiff argues that the ALJ's RFC finding set forth in the written decision contains additional limiting factors regarding Plaintiff's abilities that were omitted in the hypothetical questions posed to the VE. (Doc. 15 at 14). Therefore, Plaintiff contends the VE's testimony does not qualify as substantial evidence that the ALJ may rely upon. (*Id*.)

During the hearing, the ALJ asked the VE a hypothetical question based upon RFC factors and if the limitations imposed would enable Plaintiff to perform his past previous work. (R. at 90). The VE replied, "No." (*Id.*) The limitations the ALJ's hypothetical posed to the VE were,

> assume no exertional limitations but limited to understanding, remembering and carrying out simple instructions and performing simple, routine, repetitive tasks that require only occasional changes in the work setting gradually introduced and that require an occasional superficial interaction with the public and co-workers.

(R. at 90).

Given the VE's response that Plaintiff could not perform his past previous work, the ALJ then asked the VE if there was any work that could be performed by Plaintiff in the national economy, and the VE replied, "Yes." (*Id.*) The VE gave two examples of occupations which were a laboratory equipment cleaner and a salvage laborer. (*Id*. at 90-91). The ALJ asked the VE if an additional limitation of "medium exertional" was added to the hypothetical, would there still be availability of this work in the national economy,

and the VE replied affirmatively. (*Id*. at 91). However, Plaintiff takes issue with the ALJ's written decision because Plaintiff claims the RFC finding is more restrictive than what was presented during the hearing to the VE. The written decision states,

> [The ALJ] find[s] that the claimant has the residual functional capacity to perform a wide range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant is limited to lifting-carrying 50 pounds occasionally and 25 pounds frequently; is limited to sitting a total of six hours in a workday; is limited to standing-walking six hours; is limited to understanding, remembering, and carrying out simple instructions and performing simple, routine, repetitive tasks; is limited to occasional changes in the work setting that are gradually introduced; and is limited to occasional superficial interaction with the public and coworkers, but cannot have any crowd contact.

(R. at 17).

Plaintiff asserts that failure to include the additional limitation of no crowd contact in the hypothetical question to the VE "renders the VE's testimony insufficient to constitute substantial evidence supporting the ALJ's denial of Plaintiff's claim." (Doc. 15 at 12-13). Additionally, Plaintiff argues the extra limitation of sitting, standing and walking for six hours in a workday is not accounted for under the ALJ's "medium exertion" supplement in the hypothetical posed to the VE. (*Id*. at 13). Plaintiff believes that because the ALJ framed it as "medium exertion" to the VE instead of "medium work," that the VE could not have inferred a limitation to sitting, walking or standing in the ALJ's hypothetical. (*Id*. at 14). The Court is not persuaded by either of these arguments.

The ALJ included "occasional superficial interaction with the public and co-workers" in the ALJ's hypothetical posed to the VE. (R. at 90). As Defendant points out, it would appear that this statement accounted for public interaction when posed to the VE and would follow logically that there would be no crowd contact with these limitations imposed. (Doc. 16 at 9). Even if this was a slight by the ALJ to forego this additional factor to the VE, the Court finds it is harmless error because the occupations recommended by

the VE do not include crowd contact in their descriptions.[2] Thus, this limitation does not change the outcome of the VE's occupational recommendations and is not of consequence to the overall determination of disability, resulting in harmless error. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (defining harmless error as an error that does not affect the ALJ's nondisability determination).

Plaintiff's second argument must also fail because there is no distinction between "medium work" and "medium exertional" level as Plaintiff attempts to argue. SSR 83-10 provides the definition for "exertional level" as, "[a] *work classification* defining the functional requirements of work in terms of the range of the primary strength activities required." (emphasis added.) SSR 83-10 (S.S.A.), 1983-1991 Soc.Sec.Rep.Serv. 24, 1983 WL 31251, at *5. Strength activities are defined under "exertional activity" as "…primary

---

[2] A salvage laborer "[s]alvages materials in industrial or commercial establishment, performing any combination of duties: Collects reusable items or waste materials, such as lumber, paper, rags, fiber, yarn, rubber, beer and soft drink bottles, chemicals, and scrap metal, in scrap gondolas, barrels, or other containers, using handtruck, industrial truck, or wheelbarrow. Inspects materials and sorts items or materials into piles or places in bins or barrels according to type, size, condition, coloring, marking, or other characteristics. Salvages reusable materials and disposes of waste by pouring into sewer or waste containers, loading onto vehicle, or by burning or baling waste. Moves reusable materials to production department or storage. Separates metal particles from waste, using wire screen or magnet. Attaches labels to waste and salvage containers to identify contents. Weighs materials and containers and keeps records of total amount of waste collected. Dumps waste material, such as broke (waste paper and pulp), into machine tank for reprocessing. Makes minor repairs to scrap containers, such as bumping out dents, using handtools. May be designated according to kind of material salvaged as Broke Handler (paper & pulp); Lumber Salvager (any industry); Metal Sorter (any industry); Rag Sorter (any industry); Sack Sorter (any industry); Scrap Sorter (any industry); or specialized assignment as Scrap Burner (any industry)." 929.687-022, Laborer, Salvage, *Dictionary of Occupational Titles*, 1991 WL 688172.

A lab equipment cleaner, "[c]leans laboratory equipment, such as glassware, metal instruments, sinks, tables, and test panels, using solvents, brushes, and rags: Mixes water and detergents or acids in container to prepare cleaning solution according to specifications. Washes, rinses, and dries glassware and instruments, using water, acetone bath, and cloth or hot-air drier. Scrubs walls, floors, shelves, tables, and sinks, using cleaning solution and brush. May sterilize glassware and instruments, using autoclave. May fill tubes and bottles with specified solutions and apply identification labels. May label and file microscope slides. May arrange specimens and samples on trays to be placed in incubators and refrigerators. May deliver supplies and laboratory specimens to designated work areas, using handtruck. May tend still that supplies laboratory with distilled water. May be designated Glass Washer, Laboratory (any industry) when cleaning glassware. May maintain inventory reports and logs." 381.687-022, Cleaner, Laboratory Equipment, *Dictionary of Occupational Titles*, 1991 WL 673259.

strength activities (sitting, standing, walking, lifting, carrying, pushing, and pulling) *defining a level of work.*" *Id.* (emphasis added.) The definitions alone show that exertional level is a work classification that considers a person's sitting, standing, walking, etc., abilities. Therefore, a medium exertional level, as the ALJ in this case imparted to the VE's hypothetical question, would also account for Plaintiff's sitting, standing and walking abilities at a level of medium work. Medium work is understood to "require [ ] standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday." *Terry v. Saul*, 998 F.3d 1010, 1013 (9th Cir. 2021) (citing SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983)). The Court finds no reason to believe that the VE was not familiar with the standards of SSR 83-10 and the ALJ's hypothetical question asking about medium exertional levels imposed for standing, sitting, and walking limitations. *See id.* (determining that the ALJ's reference to medium work in his questioning of the vocational expert sufficiently conveyed Plaintiff's standing and walking limitations). As in *Terry*, it is apparent to this Court that the VE had a shared understanding with the ALJ as to what limitations the ALJ's question implied regarding medium exertion level. *See id.* at 1014. ("hold[ing] that the expert [ ] would have understood the ALJ's question to imply such a limitation, the ALJ's inquiry concerning a hypothetical individual was not incomplete."). Thus, the Court finds that the VE's testimony constituted substantial evidence to support the ALJ's determination.

**B.     The ALJ properly evaluated the medical opinion evidence.**

Plaintiff argues that the ALJ improperly rejected the treating medical sources' opinions resulting in legal error. (Doc. 15 at 15-23). The Court finds the ALJ properly weighed the medical opinions.

When evaluating medical opinion evidence in cases filed prior to March 27, 2017,[3]

---

[3] Plaintiff's application filings document dates in April 2017 (R. at 292, 294), which would appear to make this case fall under the new regulations of 20 C.F.R. § 404.1520c and § 416.920c. However, as the ALJ noted in his decision (R. at 13), Plaintiff filed a protective application on February 17, 2017, prior to enactment of the new regulations. The February 17, 2017 date is also referenced in the SSA's initial disability determination of those claims (R. at 125-126) as the filing date.

"[t]he ALJ must consider all medical opinion evidence," and there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

Although greater weight is generally afforded to treating physicians, a "treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Rodriguez v. Bowen*, 876 F.2d 759, 761–62 & n. 7 (9th Cir. 1989). If a treating physician's opinion is not given controlling weight, then the ALJ must consider the relevant factors listed in 20 C.F.R. § 404.1527(d)(2)-(6) and determine the appropriate weight to give the opinion. *Orn*, 495 F.3d at 632. "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957. If a treating physician's opinion is contradicted by another doctor's opinion, the ALJ cannot reject the treating physician's opinion unless he provides specific and legitimate reasons that are based on substantial evidence in the record." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Moreover, "an ALJ may reject a treating physician's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti*, 533 F.3d at 1041. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

1. Dr. Ritterbush, Dr. Penney, Dr. Vaughan

All three of Plaintiff's treating providers submitted check-box forms in support of Plaintiff's case. (R. at 1254-1258, 1283-1289, 1757-1763). As Defendant's brief points out, albeit with a few limitation citation errors, all three treating providers had differing opinions as to Plaintiff's abilities. (Doc. 16 at 18-19). When there are conflicting medical assessments by two physicians whose opinions are entitled to equal weight, it is within the ALJ's discretion to resolve the conflict. *See Thomas*, 278 F.3d at 956–57. Dr. Ritterbush

- 8 -

found marked limitations in interacting with the public and coworkers, while Dr. Vaughan found extreme limitations and Dr. Penney found moderate limitations in this category. (R. at 1255, 1760-61, 1284-85). Dr. Ritterbush found marked limitations in responding to changes in routine work settings, Dr. Vaughan found extreme limitations and Dr. Penney found mild limitations. (R. at 1255, 1760, 1284). In making simple work-related decisions, Dr. Ritterbush found moderate limitations, Dr. Vaughan found extreme limitations and Dr. Penney found mild limitations. (R. at 1254, 1760, 1284). As to Plaintiff's ability to understand and remember detailed instructions Dr. Ritterbush and Dr. Penney found a mild limitation while Dr. Vaughan believed it to be a moderate limitation. (R. at 1254, 1761, 1285). Further, Dr. Ritterbush found Plaintiff had extreme limitations to complete a normal workday/workweek and marked limitations to perform at a consistent pace, while Dr. Vaughan assigned extreme limitations to these categories and Dr. Penney believed it was moderate limitations. (R. at 1578, 1760, 1284).

All three treating physicians opine further restrictive abilities of varying degrees that the ALJ considered in his decision. (R. at 20-22). Ultimately, the ALJ afforded little weight to Dr. Ritterbush and Dr. Penney's opinions because the ALJ determined they overstated the Plaintiff's limitations. (R. 21). Likewise, the ALJ also gave little weight to Dr. Vaughan's opinion. (*Id.*) The ALJ found the opinions were "not supported by the medical evidence, which indicates no more than moderate restrictions because of the psychiatric impairments." (*Id.*) For example, many of Dr. Ritterbush's treatment notes show that Plaintiff was experiencing stable moods and had positive feedback about his improvement with medication, positive interactions with his family and girlfriend, improvement with sleep and diabetes, and was attending substance recovery meetings 3-5x per week and sharing within the group. (R. at 1230-1245). Additionally, many of Dr. Penney's mental status exams notate that Plaintiff had logical thought processes, intact judgment, normal orientation, denied suicidal thoughts, and Plaintiff's mood affect was stable. (R. at 1290-1324). Similarly, Dr. Vaughan's mental status exams were positive in nature with the physician opining that Plaintiff displayed calm or relaxed behavior, mostly euthymic moods, was alert with logical thought processes, no obsessive, compulsive, delusional or

suicidal thought processes, was progressing towards treatment goals in each meeting, and the doctor's assessment was always notated as "Improved" after each visit. (R. 1742-1749). Ultimately, Plaintiff takes issue with the ALJ's interpretation of the evidence and asserts that Plaintiff's interpretation of the evidence is a better alternative. But "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954. The ALJ's interpretation in this case is rational and the Court upholds the ALJ's decision.

2. Dr. Karandish

This treating physician submitted a check-box medical source statement regarding Plaintiff's diabetes impairment. (R. at 1773-1779). The doctor diagnosed Plaintiff with anxiety, depression, insomnia, sleep apnea, type II diabetes, Gerd and morbid obesity. (R. at 1773). As set out in the ALJ's discussion, the doctor opined that Plaintiff is limited to sitting six hours and standing-walking less than two hours; must be permitted to shift positions at will; is limited to lifting-carrying less than 10 pounds occasionally and up to 20 pounds rarely; is limited to fingering, handling and reaching 25 percent of the workday, rarely stooping, can never crouch or climb ladders and limited to twisting and climbing stairs occasionally. (R. at 22). Plaintiff must also avoid exposure to things such as perfumes, temperature extremes, odors, dusts, gases and cigarette smoke. (*Id.*)

The ALJ assigned little weight to this opinion. The ALJ found "[i]t is not supported by the medical evidence, which include impairments for diabetes, sleep apnea, and insomnia. These impairments have no bearing on the claimant's lifting-carrying and standing-walking limitations. Additionally, it is not consistent with the claimant's daily activities that include going to shop and doing some household chores." (*Id.*) Plaintiff takes issue with the ALJ's statement that the impairments would have no bearing on the Plaintiff's lifting, carrying, standing, and walking limitations, and that the ALJ's disbelief is not a valid reason to reject a medical opinion. (Doc. 15 at 21-22).

The ALJ did not err in rejecting Dr. Karandish's opinion finding it inconsistent with the medical evidence. While the medical records demonstrate the existence of mental

impairments and further impairments of sleep apnea, obesity and diabetes, the ALJ found the records are inconsistent with the severe limitations opined by Dr. Karandish. Physical examinations by Dr. Karandish found Plaintiff did not complain of back pain and was found unremarkable with no swelling, no joint swelling, no weakness, no hip pain, no knee pain, no leg, or foot pain (R. at 1351, 1352, 1354, 1357, 1361, 1365, 1368). This treating physician also failed to explain how his diagnosis caused Plaintiff such limitations in lifting, standing, and walking. "We have held that the ALJ may 'permissibly reject []…check-off reports that [do] not contain any explanation of the bases of their conclusions.'" *Molina*, 674 F.3d at 1111-12 (citations omitted).

Moreover, the ALJ also found the opinions of all the above-referenced treating physicians were inconsistent with Plaintiff's daily activities. An ALJ may properly rely on evidence of a plaintiff's activities to discount a doctor's opinion about the plaintiff's ability to perform simple work. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Plaintiff testified about his computer abilities which included reading articles on the internet, completing online computer classes in which he maintained A's and B's, and conducting research projects. (R. at 65-67). The ALJ also relied on the Plaintiff's abilities to do some household chores, go shopping, and provide some form of care for his live-in girlfriend who is disabled. (R. at 21-22, 52-53). Plaintiff also testified to traveling on trips with his girlfriend, embarking on long hikes lasting upwards of two hours at a time, driving independently about once a day to the grocery store or gas station or runs errands for his parents, driving to visit his parents and meets them for lunch at restaurants, driving to meetings multiple times a week for substance recovery groups and at times, taking part in hosting the meetings as a group facilitator, watching TV and reading books or substance recovery materials, making origami, playing games on his phone and checking his email, and taking part in a meditation class within a group setting. (R. at 55, 57, 59-63, 74-76, 82-84). Inconsistencies between treating physician opinions and claimant's daily activities are a specific and legitimate reason to discount treating physicians' opinions. *Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 600-02 (9th Cir. 1999).

### 3. Dr. Tromp

Plaintiff argues that this state agency consultative examining physician found Plaintiff could not stay focused for conversations or completing tasks which is a limitation that precludes all work, and the ALJ provided no valid reason for rejecting this doctor's statement. (Doc. 15 at 22). Plaintiff furthers his argument by claiming the ALJ should have contacted the doctor to further develop the record since the evidence is vague. (*Id*.)

The ALJ gave this opinion partial weight because while it does support the Plaintiff's severe mental impairments, the ALJ found the doctor's explanation regarding Plaintiff's limitations unclear and difficult to determine the precise limitations. (R. at 20). The actual report submitted by the doctor portrays a different story than what Plaintiff would have the Court believe. The entire medical report is based upon a self-reported interview of Plaintiff. The majority of the findings in this report are direct quotations attributed to the Plaintiff with very little medical conclusions given by the actual physician. For instance, the report shows that Plaintiff's symptoms and daily activity functions are self-reported. (R. at 1142, 1145). Dr. Tromp's report expressly states that, "[t]here were no records so this assessment is based on his self report and presentation." (R. at 1147). What little medical findings the doctor did report included only observations of Plaintiff's mental status which showed Plaintiff portrayed a cooperative attitude, had logical and goal directed thought processes, no delusions, unremarkable motor behavior, was clear, alert and oriented, had normal limits of insight and judgment, and good overall cognition. (R. at 1144-1145). Dr. Tromp also reported that Plaintiff achieved a 30/30 on a mental status exam (R. at 1145). While it is clear to the Court that the ALJ considered Dr. Tromp's opinion, the ALJ — and with that, the Plaintiff's misplaced argument — mistakenly attributed the report's statement "[w]ith regard to sustained concentration and persistence, he is not able to stay focused for conversations or completing tasks" to the doctor, which was not the case. (R. at 20, 1148). As Defendant points out, this was another self-reported statement made by the Plaintiff, not a medical diagnosis by Dr. Tromp. (Doc. 16 at 12-13, R. at 1148). However, the Court finds this was harmless error for the ALJ to include this

in his decision as he gave partial weight to this opinion, and it would not change the outcome of the ALJ's disability findings. Furthermore, an ALJ need not adopt wholesale any physician's opinion regarding a claimant's limitations. *See Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008).

Plaintiff's final argument regarding the ALJ's duty to contact the doctor to further develop the record also fails. The ALJ's duty "applies only to a 'treating' source, whether that is a physician, psychologist or other medical source." *Thomas*, 278 F.3d at 958. This doctor was not a treating source, but a consultant, and the ALJ was not obligated to contact her for further information.

In summary, the ALJ did not err by rejecting the opinions of Dr. Ritterbush, Dr. Penney, Dr. Vaughan, Dr. Karandish or Dr. Tromp because their opinions were inconsistent with the medical evidence in the record. The Court finds the ALJ properly identified the conflicts within the record in deciding to give greater weight to the opinions of Dr. Zuess, M.D., Dr. Rubin, Psy.D., Dr. Patterson, Ph.D., and Dr. Griffith, M.D., state agency medical consultants. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("[t]he opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.").

The ALJ acted well within the duties imparted upon him to determine the credibility of medical evidence, and he gave specific, legitimate reasons for discrediting particular opinions. And, as the ALJ "is the final arbiter with respect to resolving ambiguities in the medical evidence," the Court will not disturb his findings. *See Tommasetti*, 533 F.3d at 1041-42. The Court finds no error on the part of the ALJ.

## IV.     CONCLUSION

The Court finds that substantial evidence supports the ALJ's nondisability determination. The ALJ properly determined Plaintiff's ability to perform other work at step five and evaluated the medical opinion evidence appropriately by providing specific

and legitimate reasons supported by substantial evidence. Therefore, the Court finds that the ALJ did not err in his decision, which is based on substantial evidence. The Court need not reach the merits of Plaintiff's request to remand for an award of benefits since the Court finds a remand is unwarranted.

**IT IS HEREBY ORDERED** that the decision of the ALJ is **AFFIRMED**. The Clerk of Court is directed to enter judgment accordingly and dismiss this action.

Dated this 29th day of September, 2022.

_____
Honorable Susan M. Brnovich
United States District Judge